UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **KIMBERLY LEDBETTER,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No.: 5:24-cv-1199-LCB** |
| | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| **Commissioner**, | ) |
| | ) |
|    **Defendant.** | ) |

## **MEMORANDUM OPINION**

On August 30, 2024, the Claimant, Kimberly Ledbetter, who alleges disability due to debilitating back pain and limitations, filed a complaint seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). (Docs. 1 & 13). The Commissioner filed an answer and a copy of the administrative record on October 29, 2024. (Doc. 6). Ledbetter filed a brief in support of her position on December 30, 2024, and the Commissioner filed a response on March 19, 2025. (Docs. 13 & 21). Ledbetter did not file a reply brief. Accordingly, the issues are now fully briefed, and Ledbetter's case is ripe for review. For the reasons set forth below, the Commissioner's final decision is due to be affirmed.

## I. BACKGROUND

On June 9, 2021, Ledbetter protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning October 15, 2020. (R. at 15).[1] In her claim, Ledbetter alleged her impairments as "spinal stenosis, depression, anxiety, [and] high blood pressure." Her claim was denied initially on April 6, 2022 (*Id.* at 106–10), and upon reconsideration on March 14, 2023 (*Id.* at 106–15). Thereafter, Ledbetter requested a hearing before an Administrative Law Judge ("the ALJ"). (*Id.* at 138–39). The ALJ held a virtual hearing on September 12, 2023. (*Id.* at 30–49). Ledbetter testified at the hearing, as did an impartial vocational expert ("VE"). (*Id.*). The ALJ subsequently issued an unfavorable decision. (*Id.* at 12–29). Ledbetter requested a review of the ALJ's decision by the Appeals Council. (*Id.* at 225–27). The Appeals Council affirmed the ALJ's decision. (*Id.* at 1–6). Ledbetter filed a complaint in this Court on August 30, 2024. (Doc. 1).

## II. THE ALJ'S DECISION

To determine whether a claimant is disabled, the ALJ follows a five-step evaluation process set forth by the Social Security Administration. *See* 20 CFR 416.920(a). The steps are followed in order and, if it is determined that the claimant

---

[1] The administrative record is attached to Doc. 6 and is Bates numbered. The Court cites to the administrative record as "(R. at [corresponding Bates number]).".

is or is not disabled at any particular step of the evaluation process, the ALJ will not proceed to the next step. After the September 12, 2023, hearing, the ALJ issued a written opinion explaining the decision. (R. at 12–29). In his decision, the ALJ followed the five-step evaluation process set forth by the Social Security Administration.

The first step requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is work involving significant physical or mental activities usually done for pay or profit. *Green v. Comm'r, Social Sec. Admin.*, 555 Fed. App'x 906, 907–08 (11th Cir. 2014). If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two. In the present case, the ALJ found that Ledbetter was not engaged in substantial gainful activity during the relevant period. (R. at 17). Accordingly, the ALJ moved to the second step of the evaluation.

At step two, an ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities…." *Id.* If a claimant does not have a severe impairment, she is not disabled, and the inquiry ends. If she does have a severe impairment, the ALJ will proceed to the third step. In the present case, the ALJ found that Ledbetter had severe impairments of lumbar

3

spondylolisthesis and obesity. (R. at 17–18) (citing 20 CFR 404.1520(c) and 20 CFR 416.920(c)).[2]

At the third step, an ALJ determines whether the claimant's impairments or combination thereof are of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I. If the claimant's impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. Otherwise, the ALJ proceeds to the next step. In this case, the ALJ found that Ledbetter's impairments did not meet or equal any of the listed criteria and proceeded to step four. (R. at 19) (citing 20 CFR 404.1520(d), 404.1525, 404.1526, 416.925, and 416.926).

Step four of the evaluation requires an ALJ to first determine the claimant's residual functional capacity ("RFC"). 20 CFR 416.920(f). After that, the ALJ must determine whether a claimant has the RFC to perform the requirements of any past relevant work. *Id.* The term "past relevant work" means work performed within the last 15 years prior to the alleged date of onset. If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops. Otherwise, the

---

[2] Medical evidence of record showed Ledbetter also suffered from contact dermatitis, pharyngitis, and hypertension. (R. at 18). The ALJ found that these were not medically determinable impairments. (*Id.*). The record also showed that Ledbetter suffered from depression, but the ALJ found that this impairment created no more than minimal work-related limitations and, therefore, was a non-severe impairment. (*Id.*). Thus, the ALJ determined that Ledbetter had only two severe impairments: lumbar spondylolisthesis and obesity. (*Id.*). Ledbetter does not challenge this finding in her complaint or brief. Thus, the Court limits its discussion to only those severe impairments.

evaluation proceeds to the final step. In Ledbetter's case, the ALJ found that she had the following RFC:

> "[T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except frequent balance, stoop, kneel crouch and crawl, occasionally climbing ramps and stairs, no climbing ladders, ropes or scaffolds, frequent overhead reaching bilaterally, no concentrated exposure to extreme temperatures or vibrations, no working at unprotected heights or unguarded moving machinery."

(R. at 19). Given this RFC, the ALJ concluded that Ledbetter was unable to perform her past relevant work as a screen printer or inventory clerk. (*Id.* at 22).

However, considering Ledbetter's RFC and her age, education, and work experience, the ALJ found that there exist a significant number of other jobs in the national economy that Ledbetter could perform. (*Id.* at 24). The ALJ, adopted the VE's testimony that based on Ledbetter's RFC, age, education, and work experience, she could "perform the requirements of representative occupations such as" a router, photocopy machine operator, and marker. (*Id.* at 23). According to the VE, those jobs exist in sufficient number in the national economy. (*Id.*). Based on the findings above, the ALJ concluded that Ledbetter "was capable of making a successful adjustment to other work that existed in significant numbers the national economy" so that she was not disabled. (*Id.*).

### III. STANDARD OF REVIEW

5

This Court must review the record and determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C.§ 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The Court's role in review is limited so that the Court must not "decid[e] the facts anew, mak[e] credibility determinations, or re-weigh[] the evidence."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  Instead, the Court will scrutinize the record, and affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings.  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

## IV.     LEDBETTER'S ARGUMENT

Ledbetter raises one argument in her brief. She argues the ALJ did not properly evaluate her subjective complaints of pain, so that his decision of Ledbetter's RFC and finding of "not disabled" is not supported by substantial evidence. (Doc. 13 at 5–6). Specifically, Ledbetter argues that the ALJ "failed to

properly consider the evidence in accordance with applicable regulations" because of his "selective treatment of the [medical] record[s]." (*Id.* at 7–8).

## V.   ANALYSIS

### 1. <u>There is Substantial Evidence to Support the ALJ's Decision.</u>

To determine whether a claimant is disabled as defined by the Social Security Administration, an ALJ evaluates all symptoms, including subjective complaints, such as pain and how the symptoms affect a claimant's daily life and ability to do work. 20 CFR § 404.1529(a). But a claimant's subjective complaints alone are insufficient to establish a disability. *Id.* Rather the ALJ will apply a two-step analysis. *Id.* at § 404.1529(a)–(b). First, the ALJ looks for either objective medical signs or laboratory findings that there is a medical impairment that could reasonably be expected to produce the symptoms alleged. *Id.* If this first step is satisfied, the ALJ evaluates the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's capacity for work. *Id.* at § 404.1529(c). Specifically, the ALJ considers whether an individual's statements about the intensity, persistence, and limiting effects of her symptoms are consistent with the medical signs and laboratory findings in the record. *Id.*; *see also* SSR 16-3p. If the two are inconsistent, the ALJ may properly determine that the individual's symptoms are less likely to reduce her capacity to perform work-related activities, so that she is not disabled as defined by the Social Security Administration. SSR 16-3p.

In the Eleventh Circuit, a claimant can establish a disability based on testimony of pain and other symptoms by satisfying two parts of a three-part test (the pain standard): (1) evidence of an underlying medical condition; *and* (2) either (a) objective medical evidence confirming the severity of the alleged pain, *or* (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Holt v. Sullivan*, 821 F.2d 1221, 1223 (11th Cir. 1991). If a claimant satisfies the three-part test, the ALJ still considers the intensity, persistence, and limiting effects of a claimant's pain or other symptoms. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

The Eleventh Circuit created the pain standard when it interpreted 20 CFR § 404.1529. *See Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (citing *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1214–15 (11th Cir. 1991)). The pain standard and the Commissioner's regulations at 20 CFR § 404.1529 are consistent so that application of § 404.1529 is also application of the Eleventh Circuit pain standard. *Wilson*, 284 F.3d at 1226.

### A. The ALJ properly evaluated Ledbetter's subjective complaints with the objective medical evidence.

At the September 12, 2023, hearing, Ledbetter testified and listed her various subjective complaints regarding her pain and how it affects her daily living and ability to work. (R. at 30–49). After this hearing, the ALJ issued his written opinion finding that Ledbetter was not disabled. (*Id.* at 15–24). In his opinion, the ALJ

8

followed the five-step evaluation process discussed above and set forth in 20 CFR 416.920(a). (*Id.*). As explained above and detailed below, the ALJ's analysis hinged on step four of the evaluation process, which required an examination of Ledbetter's RFC. (*Id.*; *see* discussion *supra* p. 5). Additionally, Ledbetter's sole argument is that the ALJ did not properly evaluate her subjective pain complaints when determining that based on her RFC, she could perform light work. (Doc. 13). Accordingly, the Court must determine whether the ALJ properly evaluated Ledbetter's subjective complaints of pain.

The ALJ began his analysis using the two-step process created by the Commissioner in 20 CFR § 404.1529 to evaluate subjective complaints of pain.[3] (R. at 19–20). The first step requires "evidence of an underlying medical condition." *Holt*, 821 F.2d at 1223. Based on Ledbetter's testimony and the objective medical evidence, the ALJ determined that Ledbetter had "medically determinable impairments [that] could reasonably be expected to cause the alleged symptoms," which satisfies the first step. (R. at 20).

Next, the ALJ turned his inquiry to whether Ledbetter's complaints were confirmed by the objective medical evidence. *Holt*, 821 F.2d at 1223; (R. at 20). At this step, the ALJ found that Ledbetter's statements "concerning the intensity,

---

[3] Notably, the ALJ's application and discussion of the two-part test from 20 CFR § 404.1529 is also application of the Eleventh Circuit's pain standard.

persistence[,] and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence the record[.]" (R. at 20). That is, Ledbetter failed to satisfy the second part of the test. Thus, the ALJ found that Ledbetter was capable of performing "light work with some postural restrictions." (*Id.* at 20, 22). Accordingly, the ALJ concluded that Ledbetter was not considered disabled by the Social Security Administration. (*Id.* at 23). Ledbetter challenges this conclusion in her brief. (Doc. 13).

To support her claim of disability due to debilitating back pain, Ledbetter testified that she had last worked in October of 2020, but quit because "standing there for eight plus hours," "it just got to be too much" and she "couldn't do it anymore." (R. at 38). She testified that she had never had any surgery on her back because she consulted with an orthopedic surgeon who recommended against back surgery. (R. at 40). Nonetheless, most of Ledbetter's pain was from the middle to the lower part of her back. (*Id.*). She further testified that it "depends on the day," but some days her left leg was numb from the hip and below, with minor swelling in the left foot. (*Id.*). Because of the numbness in her left leg, she had occasionally fallen on her left side, which had caused minor issues in her left shoulder. (*Id.* at 41–42). However, she had not received treatment or sought an x-ray for her left shoulder or arm. (*Id.* at 41).

Ledbetter testified that she could walk and stand for about thirty minutes and could sit up right for about thirty to forty-five minutes, but experienced numbness while sitting. (*Id.* at 40–41). She took pain pills "daily" and "muscle relaxers twice a day or three times a day as needed." (*Id.* at 43). She testified that whether she would have to lie down during the day depended on if she took a muscle relaxer or "something else." *(Id.* at 42–43). She estimated that she could lift "probably less than 15 [pounds]." (*Id.* at 41). When asked about a "typical day," she answered, "[a] typical day is sitting at the house, watching TV or if I feel like I'll you know, I might get up and try to do something so I'm not just sitting." (*Id.* at 44). She normally sat on the couch or the recliner, and answered that sitting is her most comfortable position. (*Id.*). She "sometimes" went grocery shopping and occasionally went to eat dinner with a friend. (*Id.*).

The ALJ found that Ledbetter's subjective complaints were inconsistent with the objective medical evidence. (*Id.* at 20). In reaching this conclusion, the ALJ discussed Ledbetter's medical records and history at length. (*Id.).* The ALJ noted that on January 28, 2020, Ledbetter presented with "no tenderness of the spine," and in April, May, and June of 2020, she was "ambulating without difficulty." (*Id.*). In September of 2020, Ledbetter reported "some left leg numbness," and "was found to have some left foot and ankle swelling and mild lower back pain," but "had negative straight leg raise and no tenderness to the spine." (*Id.*). Subsequently, she

was diagnosed with "lumbago and sciatica," and "given an injection to help with the pain." (*Id.*).

On October 1, 2020, Ledbetter underwent magnetic resonance imaging (MRI), which showed that she had "bilateral L5 pars defects, mild bilateral neuroforaminal narrowing and mild right and minimal left neuroforaminal narrowing." (*Id.*). On November 16, 2020, she "had normal spine findings and no diagnosed condition other than pain." (*Id.*). In January of 2021, Ledbetter reported having worked over eight hours a day in late 2020 and reported that her back and leg pain were worsening. (*Id.*). On May 11, 2021, Ledbetter consulted with an orthopedic surgeon, complaining of "lumbar pain that was throbbing." (*Id.* at 20–21). An x-ray image showed that Ledbetter had "L5-S1 spondylolidthesis" and "physical therapy was recommended." (*Id.* at 21). Approximately one year later, at a check-up appointment, Ledbetter "wanted to discuss hip pain and have testing done." (*Id.*). Upon examination, she was "ambulating without difficulty, had a normal gait and station, and had normal strength, sensation[,] and reflexes." (*Id.*). She was diagnosed with "muscle spasm, dorsalgia[,] and neuralgia." (*Id.*).

In February 2023, Ledbetter had a consultative medical evaluation with Bharat Vakharia, M.D. (*Id.*). Dr. Vakharia reported that Ledbetter had some lumbosacral tenderness, minimally limited spinal movement, difficulty walking on her toes, and was unable to squat more than 60 degrees. (*Id.*; *see also* R. at 508). Dr.

12

Vakharia's examination also showed that Ledbetter had no muscle wasting and good handgrips. (R. at 21). Thereafter, Dr. Vakharia diagnosed Ledbetter with chronic low back pain radiculopathy and lumbar spondylolisthesis, and noted in her report that Ledbetter was obese. (*Id.*).

The same month as her consultation with Dr. Vakharia, Ledbetter reported to her general practitioner that she was continuing to have back pain and numbness in her left leg. (*Id.*). However, upon examination, she had normal strength, sensation reflexes, and normal gait and station with a normal range of motion. (*Id.*). Ledbetter's gait and strength were also normal in April and May of 2023. (*Id.*). A May 2023 report showed that Ledbetter was treating her pain with medication. (*Id.*).

Accordingly, after considering all of the relevant medical evidence and evaluating Ledbetter's subjective complaints, the ALJ concluded that she was "capable of a right of light work" "with some postural limitations." (*Id.*). Specifically, the ALJ noted that Ledbetter's "statements about the intensity, persistence, and limiting effects of her symptoms" were inconsistent with the evidence and that she was "performing activating inconsistent with her allegations" (*Id.*).

Ledbetter argues that "[t]he ALJ failed to properly consider the evidence in accordance with applicable regulations." (Doc. 13 at 8). Ledbetter cites to SSR 16-3p which notes that "persistent attempts to obtain relief of symptoms, such as

increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." (*Id.* at 8–10). To bolster her argument, Ledbetter points to several parts in the record, specifically that she "was prescribed different medications to help with her pain," that she "sought treatment with" an orthopedic surgeon and was "diagnosed with chronic axial low back pain with L5-S1 isthmic spondylolisthesis, and that she was "recommended physical therapy, home exercise, program[,] and anti-inflammatories." (*Id.*). Thus, the argument goes, that Ledbetter's objective medical records were not properly evaluated by the ALJ because they show that her debilitating back pain makes her incapable of performing a range of light work. (*Id.* at 10).

However, Ledbetter's argument is unpersuasive. The ALJ discussed all of Ledbetter's medical records in his analysis. (R. at 20–21). He found that she was capable of "light work with some postural restrictions as the record shows that she consistently had normal strength, gait, and sensation." (*Id.* at 21). Even more, the ALJ discussed Ledbetter's reported pain quite a bit, explaining that *"[d]ue to her reported pain* and some limited range of motion on examination, she is limited to frequent overhead reaching bilaterally," that "she has been given reaching restrictions *due to her reports of pain related to her back impairment*," and "that she

14

was "precluded from hazards *due to her pain* and related fatigue stemming from her combination of impairments." (*Id.*) (emphasis added). Thus, any argument that the ALJ failed to properly consider Ledbetter's objective medical records and subjective complaints is without merit.

Next, Ledbetter argues that the ALJ "erred when he concluded [that Ledbetter] had very little treatment for pain." (Doc. 13 at 10) (internal quotation marks omitted). According to Ledbetter, the ALJ did not properly account for the fact that Ledbetter had sought treatment for back pain multiple times at her local family medicine practice and with an orthopedic surgeon. (*Id.*). However, the ALJ accounted for all of these visits in his analysis. (R. at 20–21). Moreover, the ALJ's conclusion and Ledbetter's argument are not mutually exclusive—Ledbetter could have consulted with doctors about her back pain and still have received minimal treatment for her back pain.

Additionally, Ledbetter argues that the ALJ improperly relied on Ledbetter's "perceived lack of consistent treatment for her pain" so that his decision is not supported by substantial evidence. (Doc. 13 at 11). Specifically, Ledbetter argues that when the ALJ stated that Ledbetter had "very little treatment for her back pain," he "failed to include any discussion of possible reasons why [Ledbetter] did not seek additional treatment more frequently" as required by SSR 16-3p. (*Id.* at 11–12). First, Ledbetter misinterprets the ALJ's finding, arguing that the ALJ determined

15

that Ledbetter "*sought* very little treatment for her pain." (*Id.* at 12) (internal quotation marks omitted) (emphasis added). Had this been the ALJ's determination, Ledbetter's argument would have legs to stand on because Social Security Rule 16-3p states that an individual's failure to comply with or seek treatment cannot be used as a basis to find an inconsistency without considering other possible explanations. *See* Social Security Ruling 16-3p. However, this is very clearly not what the ALJ stated, instead remarking that Ledbetter "had very limited treatment for pain." (R. at 21). Looking at the medical evidence, there is substantial evidence to support the ALJ's statement that Ledbetter "had very limited treatment" for her pain. Namely, Ledbetter never had surgical treatment on her back, she rejected the use of non-surgical injections to treat her pain, and her only course of treatment was physical therapy, at-home exercises, and prescription medication on an as-needed basis. (*Id.*). Regardless, there is nothing in the ALJ's analysis that shows that the ALJ relied exclusively on Ledbetter's limited treatment to find that she was not disabled. *See Maxwell v. Social Security Administration, Commissioner*, 4:23-cv-1605-AMM, 2025 WL 817122, at *6 (N.D. Ala. Mar. 13, 2025) (explaining that an ALJ's consideration of lack of treatment was not improper when it was not the exclusive basis of the ALJ's treatment).

    Finally, Ledbetter argues that the ALJ selectively treated the record because he relied upon an "isolated notation" where it was reported that Ledbetter was

16

working over eight hours a day a month prior. (Doc. 13 at 12) (citing R. at 21). However, this argument is unpersuasive because there is nothing in the record that shows that the ALJ relied exclusively on this factor in finding that Ledbetter was disabled.

Substantial evidence supports the ALJ's finding. The Court does not assess whether *some* evidence supports Ledbetter's contentions that she has disabling limitations, but whether substantial evidence supports the ALJ's decision to find that claim unpersuasive. *Moore v. Barnhart*, 405 F.2d 1208, 1211 (11th Cir. 2005). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Viator v. Social Security Administration, Commissioner*, 6:22-cv-1518-HNJ, 2024 WL (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). Here, the ALJ relied upon the objective medical evidence, State agency medical consultants, and a neutral vocational expert in making the determination that Ledbetter had an RFC that would allow her to perform a limited range of light work with certain postural restrictions. Accordingly, his finding is supported by substantial evidence, and should be affirmed.

## VI.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED.**

**DONE** and **ORDERED** this June 24, 2025.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE